CASE 88—ACTION BY THE CITY OF LOUISVILLE AGAINST D. F. MUR-
PHY, ASSESSOR OF SAID CITY TO ENJOIN HIM FROM ASSESSING
THE FRANCHISES OF CERTAIN PUBLIC SERVICE CORPORATIONS FOR
TAXATION FOR CITY PURPOSES—FEB. 10.

# Murphy v. City of Louisville.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

TAXATION— ASSESSMENT— FRANCHISES— PUBLIC    SERVICE    CORPORA-
TIONS—IMPLIED REPEAL OF STATUTES—ENACTMENT—TITLE.

Held: 1. Act March 19, 1898, conferring on the city assessor of cities
of the first and second classes authority to assess the franchises
and intangible property of certain public service corporations,
was not repealed by the general revenue act of 1902, which pur-
,ports to be an amendment to the revenue law of 1892, as
amended by twelve acts specifically enumerated in the title,
not including the act of 1898, and providing that the assess-
ment of the franchises, etc., of such corporations, shall be made
by a board of valuation and assessment; and hence it was the
duty of the assessor of the city of Louisville, a city of tne
first class, and not the board of valuation and assessment, to
assess the franchises of such corporations within such city.

2. Act of 1898, entitled "An act concerning the assessment and val-
uation for taxation of corporate franchises and intangible prop-
erty, by cities of the first and second class," was not objec-
tionable as containing more than one subject, by reason of
the fact that it applied to cities of different classes.

3. Act 1898, providing for the taxation by cities of the first and sec-
ond classes of franchises of public service corporations, was
not invalid on the ground that it attempted to revise, or amend
the general law in regard to revenue, and did not contain a re-
cital of the laws amended at length.

HUMPHREY, BURNETT & HUMPHREY AND HELM, BRUCE &
HELM, FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. Repeals by implication are not favored, and where the Leg-
islature has had its attention called to a particular subject
and provided for it, the Legislature can not reasonably be

Murphy v. City of Louisville.

presumed to intend to alter the special provision by a subsequent general enactment. Endlich on Interpretation of Statutes, sec. 223; Sedgwick on Statutory Construction, secs. 157, 158; Sutherland on Statutory Construction, sec. 157; Cope v. Cope, 137, U. S., 682; McChord v. L. & N. R. R. Co., 183 U. S., 483; Commonwealth v. Cain, 14 Bush, 583; Thorpe v. Adams, 1 L. R., 6, C. P., 135; Fitzgerald v. Champenys, 30 L. J. N. S. Eq., 782.

2. The act of 1898 providing for the assessment of corporations therein named by the local assessor for local purposes is not in conflict with either sections 51, 60 or 156 of the Constitution. Purnell v. Mann., 20 Ky. Law Rep., 1146.

HENRY L. STONE, JOHN F. LOCKETT, J. G. COVINGTON, G. W. JOLLY, W. S. BRONSTON, W. H. JULIAN and F. J. HANLON, FOR APPELLEE.

Our contention is:

1. The board of valuation and assessment alone has power to value and assess the franchises of public service corporations for municipal taxation.

2. The acts of March 19, 1898 and March 23, 1900, were and are unconstitutional and void, being in violation of sections 51, 60 and 156 of the State Constitution.

AUTHORITIES CITED.

STATEMENT.

Sess. Acts 1898, pp. 96-102; Sess. Acts 1902, pp. 281-392; Sess. Acts 1900, pp. 89-90.

1. Sess. Acts 1891-2-3, pp. 277-366; Ib., 981-1002; Sess. Acts 1900, pp. 65-67; Lyddy v. Long Island City, 104 N. Y., 218; Co. Litt., 112; Shep. Touchst, 88; Sims v. Doughy, 5 Ves., 243; Constantine v. Constantine, 6 Ves., 100; Morral v. Sutton, 1 Phila., 533; Ely v. Thompson, 3 A. K. Mar., 70; Graham v. Luckett, 6 B. Mon., 146; Endlich on the Interpretation of Statutes, sec. 200, p. 269; People v. Lytle, 1 Idaho, 161; Commonwealth v. Kelliher, 12 Allen (Mass.), 480, 481; Herron v. Carson, 26 W. Va., 62; State v. Williamson, 44 N. J. L., 165; Endlich, sec. 206, p. 275; Payne v. Connor, 3 Bibb, 180; Korah v. Ottawa, 32 Ill., 121; Gwinner v. R. R. Co., 65 Pa. St., 126; People v. Van Nort, 64 Barb. (N. Y.), 205; Endlich, sec. 231, pp. 310-11; Endlich, sec. 241, pp. 320-21; Long v. Stone, 19 R., 246; Combs v. Crawford, Ib., 1510; Fultz v. Crofton, Ib., 1921; Buchannon v. Commonwealth, 95 Ky., 334; Broaddus v. Broaddus, 10 Bush, 306-8; Adams v. Ashby, 2 Bibb, 97; Hickman v.

Littlepage, 2 Dana, 345; Dougherty v. Commonwealth, 14 B. Mon., 244.

2. Act of March 19, 1898; Act of March 23, 1900; Secs. 51, 60, 156 of the State Constitution.

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

The question involved is, shall the city assessor of Louisville, a city of the first class, assess the franchises of certain public service corporations for taxation for city purposes, or the board of valuation and assessment? The solution of this question depends upon whether the general revenue act of 1902, Sess. Acts 1902, pp. 281 to 392, inclusive) repeals the act of March 19, 1898 (Sess. Acts 1898, pp. 96 to 102, inclusive). The latter is an act concerning the assessment and valuation for taxes of corporate franchises and intangible property by cities of the first and second classes. This act expressly confers upon the city assessor the authority to assess the franchises and intangible property of the corporations in question but franchises of railroads are not included in this list. Previous to that time, under the general revenue law, which went into effect November 11, 1892, such franchises were assessed by the board of valuation and assessment, composed of the auditor, treasurer, and secretary of State. It is admitted that the act of 1898, if constitutional, repeals so much of the act of 1892 as authorized the board of valuation and assessment to assess these franchises, and that it was in force when the act of 1902 was passed. The act of 1902 is a general revenue act, the title of which is extraordinary, in that it purports to be an amendment to the revenue law approved November 11, 1892, as amended by twelve acts specifically enumerated in the title. Each of these amendments were general laws, and amendatory of the act of 1892. The title concludes, "that such act of

November 11th, 1892, and as amended by the above stated subsequent acts and amendments thereto as now amended and re-enacted will read as follows." It would appear from the title of this act that the Legislature intended that there should be no mistake as to the purpose intended to be accomplished by the new enactment, and that there could be no question but what it was intended to be a substitute for the acts to which reference is made in the title. The act of March 19, 1898, applied only to cities of the first and second classes, and does not purport to be an amendment to the revenue act of 1892, or amendatory to any of the amendment thereto. If the Legislature had intended that the act of 1902 should also be substituted in lieu of the act of 1898, it seems extremely strange that, in its enumeration of the acts, it would have failed to refer to it as one of the acts proposed to be changed. In 1890 an act was passed authorizing the city assessors of cities of the third class to assess the franchises of certain corporations for taxation, and no reference is made to that act. Then there were two acts, which in a certain sense were general, but in application purely local, that were not mentioned or referred to in the act of 1902. These acts were only general in the sense that they referred to all cities of the classes mentioned therein, but they are local in the sense that they apply alone to certain cities.

In construing an act, the important thing is the ascertainment of the intention of the Legislature. To do this, we must consider the title of the act, its context, and the purpose of its enactment. It is well to bear in mind that the universal rule is that repeals by implication are not favored, and further, that when one act is local in its nature or application, or relates to particular places or persons, and the other a general one, they will both be up-

held, and considered as forming one consistent whole. It
is said in Cope v. Cope, 137 U. S., 686, 11 Sup. Ct., 223, 34
L. Ed., 832, that "nothing is better settled than that re-
peals (and the same may be said of annulments) by impli-
cation are not favored by the courts, and that no statute
will be construed as repealing a prior one unless so clearly
repugnant thereto as to admit of no other reasonable con-
struction." The same rule was recognized in McChord v.
L. & N., 183 U. S., 483, 22 Sup. Ct., 165, 46 L. Ed., 289. If,
under this rule, it could not be held that the
act of 1898 was not repealed, it is certain that
the rule for the interpretation of statutes with relation to
the effect of a general upon a local law does control. The
Legislature evidently did not have its attention directed
to the subject of the act of 1898, and did not intend to
derogate from that act when it made no special mention
of its intention to do so. This court has universally recog-
nized this rule of interpretation. In Commonwealth v.
Cain, 14 Bush, 525, the court said: "It is a familiar rule
of construction, both in England and America, that a stat-
ute can only be repealed by an express provision of a sub-
sequent law or by necessary implication. There must be
such a positive repugnancy between the provisions of the
statutes that they can not stand together or be consistently
reconciled. This rule applies when both statutes are of a
general nature, but when one is local in its nature or ap-
plication, or relates to particular places, or persons, and
the other is general, they will both be upheld and construed
as forming one consistent whole." Endlich on Interpre-
tation of Statutes recognizes the same rule, as section
223 reads as follows: "It is but a particular application of
the general presumption against an intention to alter the
law beyond the immediate scope of the statute to say that

a general act is to be construed as not repealing a particular one; that is, one directed towards a special object or a special class of objects. A general later affirmative law does not abrogate any earlier special one by mere implication. *'Generalia specialibus non derogant.'* The law does not allow the exposition to revoke or alter, by construction of general words, any particular statute, where the words of the two acts, as compared with each other, are not so glaringly repugnant and irreconcilable as to indicate a legislative intent to repeal, but may have their proper operation without it. It is usually presumed to have only general cases in view, and not particular cases, which have been already otherwise provided for by the special act, or, what is the same thing, by a local custom. Having already given its attention to the particular subject, and provided for it, the Legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment unless that intention is manifested in explicit language, or there be something which shows that the attention of the Legslature had been turned to the special act, and that the general one was intended to embrace the special cases within the previous one, or something in the nature of the general one making it unlikely that an exception was intended as regards the special act. The general statute is read as silently excluding from its operations the cases which have been provided for by the special one; for, as was said of the relation of a general act to a local one applying to a single county of the State, 'it is against reason to suppose that the Legislature, in framing a general system for the State, intended to repeal a special act which the local circumstances of one county had made necessary.' The fact that the general act contains a clause repealing acts inconsistent with

it does not diminish the force of this rule of construction."
Independent of the unusual title of the act, under this
rule of interpretation, we should hold the act of 1898 was
not repealed; but the title to the act furnishes an addition-
al reason for so holding, because it manifests an intention
to only substitute the new for the previous acts to which
reference is made in the title, and kindred acts of a gen-
eral nature. The general repealing clause of the act can
only apply to any purely general law affected by the act,
not to laws of local application.

On behalf of the appellee much importance is attached to
the fact that article 3, section 8, of the act of 1902, used
substantially the same language as was contained in the
act of 1892, which authorized the board of valuation and
assessment to assess franchises in question for taxation;
but this language is used because all the cities, other than
the first, second, and third classes, were affected by the
act, and the franchises therein were to be assessed by the
board of valuation and assessment. The language used in
the section and article referred to was to embrace the
cities other than those of the first, second and third classes.
It was not necessary to attempt to except these cities
from the operation of the act, because that had been done
by the previous acts. Besides, to have employed such lan-
guage, making such exceptions, might have invited crit-
icism to the effect that it was in conflict with section 60
of the Constitution, which provides that the "General As-
sembly shall not indirectly enact any special or local act
by the repeal of any part of a general act or by exempting
from the operation of the general act, any city, town, dis-
trict or county, but laws repealing local or special acts may
be enacted." It must be understood that the court is not
expressing an opinion on that question, as it is not here.

By the act of 1902 the Legislature was dealing with the
act of 1892 as it found it—with the cities of the first, sec-
ond, and third classes excluded from its provisions with
reference to the assessment of certain franchises. It is
therefore possible to uphold the act of 1898 and the act of
1892 as amended by the act of 1902, and to construe them as
forming one consistent whole.

It is insisted upon behalf of the appellee that the act of
1898 is violative of sections 51 and 156 of the Constitution.
Section 51 of the Constitution reads as follows: "No law
enacted by the General Assembly shall relate to more than
one subject, and that shall be expressed in the title, and
no law shall be revised, amended, or the provisions there-
of extended or conferred by reference to its title only,
but so much thereof as is revised, amended, extended or
conferred, shall be re-enacted and published at length."
The title to the act of 1898 concerns the assessment and
valuation for taxation of corporate franchises and intangi-
ble property by cities of the first and second classes. There
is but one subject to the title, and that is the assessment
and valuation for taxation of corporate franchises and in-
tangible property. The mere fact that it applies to cities
of different classes can not make the act relate to more
than one subject. Section 156 of the Constitution requires
cities and towns to be classified, and the same law applies
to all cities of a given class. This does not mean that a
general law could not be made applicable to all the cities
and towns of the Commonwealth.

The proposition is urged that the act of 1898 is invalid
because it is an attempt to revise or amend the general law
in regard to revenue. This proposition is answered in
Purnell v. Mann, 105 Ky., 87 (20 R., 1146) 48 S. W., 407. In

that case the court said: "There is no direct reference made in the act in question to any particular section of the general election law amended or repealed by it, nor do we think section 51 expressly or impliedly requires it done. The act, as passed and published, is full and specific enough; as to all subjects embraced by it, to show for what parts of the general election law it is substituted, and those parts are, both in terms and by implication repealed, leaving the residue unaffected and in full force. Manifestly, neither members of the General Assembly nor the people could misunderstand, or be deceived as to the purview, purport or effect of the act." Section 60 of the Constitution was not violated by the act of 1898. The act of 1898, not indirectly, but directly, repealed part of the act of 1892. That section does not mean that a general law can not be passed in reference alone to cities of two classes. If a general law applies to cities of all classes, it necessarily must apply to the cities of the same class. Such a law would not be violative of the provisions of the Constitution. As illustrative of this, counsel for appellant suggest section 1486 of the Kentucky Statutes, which provides that "in all cities and towns of the first, second, third and fourth classes there shall be registration of all the qualified voters of the respective cities and towns, which registration shall be held and conducted as herein provided." This section is certainly constitutional. We are of the opinion that the act of 1898 is constitutional, and that the act of 1902 did not repeal it.

Judgment is reversed for proceedings consistent with this opinion.

Judge Hobson's dissenting opinion:

The act of November 11, 1892, provided a system for the taxation of the franchises of public service corporations

by the State, and the several counties, cities, towns and
taxing districts.    It vested the power of assessing these
franchises in the board of valuation and assessment. Their
assessment was the basis of taxation by the State, and by
all the counties, cities, towns and taxing districts where
the franchises were exercised. Sess. Acts, 1891-93, pp.
981-1002.   On March 19, 1898, an act entitled "An act con-
cerning the assessment and valuation for taxation of cor-
porate franchises and intangible property by cities of the
first and second class" was passed, providing for the as-
sessment of these franchises by the city assessor for the
purpose of city taxation.   See Sess. Acts 1898, pp.. 96-102.
On March 29, 1902, the Legislature enacted a general rev-
enue act (Sess Acts 1902, pp. 281-392).   The question in
this case is whether the last act repealed the act of March
19, 1898, by which the city assessor was authorized to as-
sess for taxation in cities of the first and second classes
the franchises of these corporations.   Article 3, subd. 1,
of the act, provides for the taxation of the franchises of
these corporations.   Pages 305-313.   In section 1 the cor-
porations to be assessed are specified.   The auditor, treas-
urer and secretary of State are constituted a board of
valuation and assessment for fixing the value of the fran-
chises; and, where more than one jurisdiction is entitled
to a share of the taxes, the board is authorized to deter-
mine how the tax shall be apportioned.   By section 2, re-
ports are to be made to the auditor of a number of facts
necessary to an intelligent assessment of the franchises.
By sections 3, 4, and 5, rules as to the apportionment of
taxes are given "in each county, incorporated city, town or
taxing district."   And in section 5 these words are used:
"Such corporate franchise shall be liable to taxation in
each county, incorporated city, town or district through

or into which such lines pass or are operated in the same proportion that the length of the line in such county, city, town or district bears to the whole length of lines in this State." Section 6 provides for a like system of taxation of any association not incorporated, engaged in the business mentioned in the first article. Section 7 provides for a hearing before the board by any of the companies as to the valuation. Section 8 then follows, in these words: "The auditor shall, at the expiration of thirty days after the final determination of such values, certify to the county clerk of the counties, when any portion of the corporate franchise of any such corporation, company or association shall be liable to local taxation as herein provided, the amount thereof liable for county, city, town or district tax; and such certificate shall be by each county clerk filed in his office, and be by him certified to the proper collecting officer of the county, city, town or taxing district for collection, and all county, city, municipal, school and other taxes shall be due and payable thirty days after the notice of the amount of such tax is given by the officer whose duty it is to collect the same." Sections 9, 10, 11, 12, 13 and 14 make provisions in regard to the reports required of these corporations designed to secure the making of the reports. Section 15, after setting out that "all county, municipal school and other taxes shall be due and payable thirty days after notice of the amount of the tax is given," adds: "Every such corporation, company or association failing to pay its taxes after receiving thirty days notice shall be deemed delinquent, and a penalty of ten per cent. on the amount of the tax shall attach, and thereafter such tax shall bear interest at the rate of ten per cent. per annum; any such corporation or association failing to pay its taxes, penalty and interest after becoming

delinquent shall be deemed guilty of a misdemeanor and on conviction shall be fined fifty dollars for each day the same remains unpaid, to be recovered by indictment or civil action of which the Franklin circuit court shall have jurisdiction." Page 311. The last section of that act is in these words: "All acts and parts of acts in conflict with this act are to the extent of such conflict repealed."

It will be observed that the act creates a board to make the assessment of the franchises of these companies, and authorizes that board to apportion the taxes between the several counties, cities, towns, and taxing districts entitled thereto; expressly providing that all county, city, municipal, school and other taxes shall be due and payable thirty days after the certificate of this board is filed in the clerk's office in the county, and notice of the amount of the tax is given by the officer whose duty it is to collect it. It will also be observed that the act provides a ten per cent. penalty, as well as the payment of interest at 10 per cent., upon all county, municipal, school and other taxes which are not paid when due, as above provided. And then, finally, it is provided that all acts or parts of acts in conflict therewith are, to the extent of such conflict, repealed. The act of 1898 authorizing the assessment of the franchise of these corporations in cities of the first and second classes by the city assessor for municipal taxation is clearly inconsistent with these provisions, for they require the assessment to be made by the board created thereby, not only for State purposes, but for "taxation in each county, incorporated city, town or district through or into which such lines pass or are operated in the same proportion that the length of the line in such county, city, town or district bears to the whole length of lines in this State." They necessarily regulate the entire subject of

the assessment of the franchises of these corporations for
State and municipal purposes, for nothing is excepted out
of their operation, and, on the contrary, all acts or parts
of acts in conflict with them are expressly repealed.  Can
it be believed that section 15, regulating the penalty and
the interest to be paid on these taxes if delinquent, was
not intended by the Legislature to apply to all cities of
the Commonwealth?  And if section 15 applies to cities
of the first and second classes, why does not section 1 or
section 8?  That the Legislature intended the act as a
general revenue law is apparent from other provisions in
it.  The next subdivision of article 3 provides for the as-
sessment of the stock of national banks, and manifestly
applies to the "State, county, city, town and district."
The next subdivision regulates building and loan associa-
tions; the next, turnpikes.  Article 4 regulates railroads,
and is applicable by its express terms, not only to State
taxes, but to "all county, city, municipal, school and other
taxes."  Article 5 regulates the distillery bonded ware-
houses, and, by its terms, covers the taxes due the county,
city, town or taxing district as well as the State.  When
it is conceded that as to railroads, distilleries and the like
the act applies to all cities, how can it be maintained that
it does not, as to franchises of the public service corpora-
tions, where precisely the same words are used, and, by
the express terms of the act, all laws in conflict with it
are, to the extent of such conflict, repealed?  "It is
not in accordance with the settled rules of construction
to ascribe to the law-making power an intention to estab-
lish conflicting and hostile systems upon the same sub-
ject, or to leave in force provisions of law by which the
later will of the Legislature may be thwarted or over-
thrown.  Such a result would render legislation a useless

and idle ceremony, and subject the law to the reproach of uncertainty and unintelligibility." Lyddy v Long Island City, 104 N. Y., 218, 10 N. E., 155. In Payne v. Connor 6 Ky., 180, this court had before it the effect of a repealing clause which was in these words: "All acts or parts of acts coming within the purview hereof shall be and the same are hereby repealed." Speaking of the meaning of the word "purview," the court said: "The meaning usually attached to this term by writers on law seems to be the enacting part of a statute in contradistinction to the preamble, and we think the provision of the act repealing all acts or parts of acts coming within its purview should be understood as repealing all acts in relation to all cases which are provided for by the repealing act." In the case before us the words of the repealing clause are broader. All acts in conflict with the last act are, to the extent of such conflict, repealed; and the case we have before us is, in express terms, provided for by the repealing act. The statute before us, being a general revenue law, must be held to repeal all other statutes inconsistent with it then in force. In the Encyclopaedia of Law, vol. 23, p. 477, the rule is thus stated: "Where an act is passed covering the whole of a particular subject or field of legislation, it is customary to insert a general clause repealing all acts or parts of acts inconsistent therewith. Such a clause is effective in repealing inconsistent enactments." In Patterson v. Caldwell, 4 Metc., 489, this rule was enforced by this court, where it was held that section 875 of the Code of Practice, repealing all laws inconsistent with its provisions, or applicable in any case provided for by the Code, abrogated certain provisions of the Revised Statutes as to taking out an attachment. This was followed in Grigsby v. Barr, 77 Ky., 330. The authorities elsewhere

are uniform to the same effect. U. S. v. Cheeseman, 3 Sawy., 424, Fed. Cas., No. 14,790; McRoberts v. Washburne, 10 Minn., 23 (Gil. 8); Ogden v. Witherspoon, 3 N. C., 227, Fed. Cas. No. 10,461; Prince George County v. Laurel, 51 Md., 464.

Two grounds are relied on to distinguish this case from those cited:

(1) The title of the act is very unusual. It is entitled "An act to amend the act of November 11, 1892," as amended by twelve subsequent acts, each entitled, "An act to amend" the act referred to; and, after setting out all these in the title, it concludes with these words: "So that said act of November 11, 1892, and as amended by the above stated subsequent acts and amendments thereto, as now amended and re-enacted, will read as follows." The title of an act may properly be looked to in construing the language of the act. But where there is no ambiguity in the terms used, the title can not be allowed to override the express provisions of the act itself. Everything in the act in question is germane to the subject expressed in the title. The fact that the act of 1898 was not referred to in the title is wholly immaterial. The only unusual thing is that so many amendments of the act of 1892 were set out in the title. If all the acts intended to be affected had been set out in the title, then it would have been entirely superfluous to have added the section repealing all laws in conflict with the act, for, if there was nothing for this section to operate on, why was it inserted? There were many learned lawyers in the General Assembly, who were acquainted with the previous legislation; and if all acts, so far as they were in conflict with this act, were not intended to be repealed by it, are we to assume that the Legislature meant nothing by the repealing clause?

All acts similar to the act of 1898 which had been passed since November 11, 1892, were not set out in the title. See act entitled "An act to regulate the assessment and sale of lands for taxation owned by non-residents of this Commonwealth" (Acts 1894, p. 199); also, "An act extending the same (Acts 1894, p. 212); also, an act entitled "An act regulating the mode of assessing building associations" (Acts 1894, p. 342). Are all these acts, so far as they are inconsistent with the act of 1902, still in force? If not, how is the act of 1898 to be distinguished from the other inconsistent acts which are repealed, to the extent they are inconsistent? Besides all this, the legislative purpose seems plain enough. There had been a number of amendments to the act of 1892, so that the real law on the subject had to be spelled out from a number of inconsistent enactments. The Legislature desired to make further changes, and, to show that the act is now passed superseded not only the original act, but all the amendments to it, placed in the title of the act all the acts intended to be blotted out, so that it would be understood that the law of the State was not to be spelled out in part from these acts, and in part from the act which they passed. The act of 1898 was not one of those thus consolidated in the new act, and therefore was not mentioned in the title. But it was one of the acts coming within the purview of the repealing clause, because inconsistent with the provisions of the act.

(2) The rule is invoked that a general law does not repeal a special law on the same subject, and that both will be read together where this is practicable. The rule is admitted, but it is not perceived that it has any application to the case before us. It rests upon the presumption that the Legislature, in making the law for the entire State,

did not have in mind the question of changing a special act applicable to a single town or county. But the act in question is not of this character. It applies to all cities of the State of the first and second classes. All cities having a population of 20,000 or more must belong to one of these classes. So that the act applied to all cities in the State having a population of as much as 20,000. Const., section 156. By amendment it was made applicable to cities of third class having a population of 8,000. The court knows judicially that this embraces all the more important cities in the State, and that in these cities the public service corporations are mainly located. Banks, trust companies, guaranty companies, gas companies, 'water' companies, street railway companies, electric light companies, and the like, in the main, have their headquarters at the centers of capital; and to exempt all of them, in cities of the first, second and third classes, from the operation of the bill, would have been to exempt most of this capital from municipal taxation in the manner provided by the statute. It is incredible that the Legislature could have overlooked such an exception, if it had intended to make it, for the reason that, as to municipal taxes, the exception would have been larger than what was left in the act. To apply the rule referred to in such a case would be to ignore the reason for the rule, and to refuse proper effect to the express terms of the statute, repealing all other acts inconsistent therewith.

The general rule is that a statute revising the entire subject-matter of a previous act repeals it by implication Bartlet v. King, 7 Am. Dec., 99; State v. Wilson, 82 Am. Dec., 163; Rogers v. Waltrous, 58 Am. Dec., 100; 7 Lawson on Rights and Remedies, section 3779. The argument for appellant, which is adopted by the court, treats the

case as dependent on the question whether that rule should be applied here. But that is not the case we have. Here the statute does not leave to implication what was meant, but, in express terms, declares that all inconsistent acts are, so far as they conflict with this act, repealed. In Endlich on Interpretation of Statutes, after stating the rule as to implied repeals, in section 266, it is said: "Yet where a statute contemplates, in express terms, that its enactments will repeal earlier acts by their inconsistency with them, the chief argument or objection against repeal by implication is removed, and the earlier acts may be more readily treated as repealed. . . . Thus a declartion in a general law that all acts or parts of acts, whether local or special, or otherwise inconsistent with its provisions, are to be deemed repealed, will repeal inconsistent provisions, even in special acts" If there had been no repealing clause in the act in question, it would have been a matter of construction for the court, on the whole act, how far the provisions of the statute were intended to supersede other acts not named in the title, covering the same subject-matter. But when the Legislature went further, and repealed all inconsistent acts, there is no room for the doctrine of implied repeal, and the only question is whether the former act is consistent with the latter. The acts set out in the title are, by its express terms, reduced to one, and embraced in the act in question. The repealing clause can not have reference to these acts, for by the terms of the act the new act is substituted for them; and if the repealing clause does not apply to other acts than those named in the title, it was merely surplusage. No rule is better settled than that the court must presume that the Legislature meant something by a section of the bill, else it would not have been added to it. If in the

title the bill had been designated merely as an act to
amend the act of November 11, 1892, would there be any
doubt that the section repealing all other acts inconsistent
with it would have embraced the act of 1898? But if the
title had so read, other amendments to the act of 1892,
so far as they were not inconsistent with this act, would
have been left in force. To avoid this, and incorporate
in one act these various amendments, the title of these acts
was inserted in the caption; and for each other inconsistent
acts, so far as they were in conflict with the act in ques-
tion, the last section was added, repealing them so far as
they conflicted with this act. If the repealing clause of
this act had provided that all acts, special or general, in
conflict therewith, were, to the extent of said conflict, re-
pealed, then, under all the authorities, this would have
included the act of 1898. But the Legislature of this State
is by the Constitution forbidden to enact special or local
laws. The subjects embraced in the act of 1902 must,
under the Constitution, be regulated by general laws. The
authorities from other States, where general legislation is
prohibited, to the effect that a general repealing clause
does not include special acts, has no place in this State.
It would never occur to any one to insert now, in a bill
covering a subject which must be regulated by general
laws, words repealing special acts inconsistent therewith,
and it can not be expected the Legislature should do a
vain thing. To say that the act of 1902 could have con-
templated that it was only to apply to the cities and towns
of the State other than those of the first, second, and third
classes, as to municipal taxation of franchises, is to pre-
sume that the Legislature, when it used general words in-
cluding all the cities, intended to exempt from this mode
of municipal taxation at least three-fourths of this class

City of Lexington v. Ky. Chautauqua Assembly.

of capital in the State. If the statement of the proposition is not sufficient answer to it, then it is submitted that the presumption no longer exists that the Legislature acts intelligently, and uses words in its enactments advisedly.

I therefore dissent from the opinion of the court.

Judge Nunn concurs in this dissent.

Petition for rehearing by appellee overruled.