CASE 26.—ACTION BY M. P. MILLER AGAINST THE CITY
OF PINEVILLE AND OTHERS FOR A MANDAMUS TO
COMPEL THE CITY TO LEVY AND COLLECT FROM CER-
TAIN CITIZENS WHO HAD BEEN "CUT OFF" FROM THE
CITY, TAXES TO PAY BONDS OWING BY THE CITY.—
October 13.

### Miller v. City of Pineville, &c.

Appeal from Bell Circuit Court.

M. J. Moss, Circuit Judge.

Judgment for defendants.  Plaintiff appeals.  Af-
firmed.

1. Municipal Corporations—Detachment of Territory—Liability
for Debts—In the absence of statutory or constitutional pro-
visions to the contrary, property within the territory placed
beyond the limits of a city, on the boundaries thereof being
changed as authorized by Ky. Stats. 1903, sec. 3483, is not
subject to taxation for the payment of bonds issued by the
city while the territory was within its limits.

2. Same — Alteration of Boundaries — Statutes — Validity — Ky.
Stats. 1903, sec. 3483, authorizing the changing of the bound-
aries of cities by reducing the limits thereof, etc., is not
invalid because only the taxpayers in the territory proposed
to be stricken off can make a defense, and because the
defense is limited to a showing that the change will impose
unjust burdens on them, the Legislature having the power
to reduce the limits of municipalities and to limit the defense
to a proceeding therefor.

3. Same—Detachment of Property—Agreement to Pay Debts—Ef-
fect—Where territory was placed beyond the limits of a
city in proceedings to reduce its limits, the taxpayers liv-
ing within the territory cut off are not subject to taxation
to pay the bonds issued while the territory was within the
limits of the municipality, though they agreed with the
municipal officers to pay their share of the debts, authority

to levy taxes not being the subject of agreement, but being a power vested in the Legislature alone.

WELLER & POINTS for appellant.

There are four questions presented by this appeal, viz:

1. Was the cut-off territory ever liable for its proportion of the bonded indebtedness?

2. Is sec. 3483 of the statute constitutional?

3. If so, has the city council the power to impose and collect taxes from the stricken territory for the payment of its proportion of the bonds?

4. If the power exists, may a citizen and taxpayer of the city by mandamus compel the exercise of the power on the part of the city council?

1. Liability of cut-offs—Under secs. 171 and 172 of the Constitution, and sec. 4020 of the Ky. Stats., and the numerous decisions of this court on the question, there is no doubt that the territory stricken off was liable for its proportion of the bonded indebtedness at the time the cut-offs were made. (Chambers v. Adair, 23 Ky. Law Rep., 373; 18 L. R., 389; 19 L. R., 1068; 19 L. R., 1455; Carpenter, &c. v. Central Covington, 26 Ky. Law Rep., 430.)

2. Statute Unconstitutional—We think the statute is unconstitutional for three reasons: (First.) It is a violation of sec. 2, of the Bill of Rights, which provides: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." (Second.) The statute is a violation of sec. 28 of the Constitution, which provides: "No person or collection of persons being of one of those departments (mentioned in sec. 27) shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." (a.) Enlarging or reducing the boundaries of cities is purely legislative, and can not be conferred upon the judicial courts. (Dillon Munic. Corp., sec. 183; Galesburg v. Hawkins, 75 Ill., 152.) (b.) Power is given the circuit court under secs. 3714 and 3715 of the statutes to establish new towns, but this is because some tribunal, board or set of officers must first define the boundary to be included within the incorporate limits, and this power, though political or administrative, may be conferred upon the judicial courts. (Dillon, sec. 183; Morton v. Woodford, 18 Ky. Law Rep., 271.) (Third.) The statute is in violation of sec. 19 of the Constitution, which

Miller v. City of Pineville, &c.

provides: "No ex post facto law, nor any law, impairing the obligation of contracts shall be enacted."

3. We contend that the city has never lost the power by the proceedings mentioned to tax this cut-off territory for the payment of the bonds, and, as a matter of law, reason and justice, the stricken territory is still a part of the city and within its reach for taxation for the purposes mentioned; power given under subsecs. 2 and 26, above mentioned, has never been lost, destroyed or taken away.

4. We do not think the right of the taxpayer to bring this mandamus suit can be seriously questioned, if the power to tax is still with the city council and it refuses to exercise it. Every taxpayer in the city has the unquestioned right to see that every other taxpayer discharges his just proportion of the city burden.

HAZELRIGG & HAZELRIGG and N. B. HAYS for appellee.

1. The alleged agreement is pleaded too indefinitely and uncertain to be made the basis of a judgment giving relief in that behalf. Agreement with whom in the presence of the council? The alleged agreement had a string to it. We will be bound "the same as before the cut-off if ever bound at all." If they supposed themselves never bound, there was no meeting of the minds of the alleged contracting parties, and, besides, the conditions on which the alleged agreement to be bound are not averred in the petition to exist. The petition does not allege that the cut-off people "ever were bound at all," and this, we think, is altogether conclusive if we are mistaken heretofore. Moreover, the alleged agreement, even if attempted to be made, would have been void as against public policy.

2. The act (sec. 3483) providing the method of annexing or cutting off territory, is constitutional. The act being valid and constitutional, it follows:

First. That whatever injustice, and we deny that any was done, that would result to the city or any of its taxpayers by the reduction and cut-off of Wasiota, after the full notice to all as provided in the law, must have been asserted as a defense in that suit, and that no such defense having been made, the city and all others must thereafter hold their peace.

Second. That the cut-off being lawful, the usual legal consequences must follow, and these consequences are well established by all the authorities, and these consequences are: That in the absence of statutory adjustment of a division of burdens and

a distribution of the corporate property, when a part of a city is stricken off, or certain territory is added to a city, the city, as left after the change, takes all the corporate property and pays all the corporate debt. The stricken part gets no corporate property and shoulders no corporate debt.

### AUTHORITIES CITED.

City of Pineville v. Creech, 16 Ky. Law Rep., 172; Acts 1889-90, vol. 2, p. 1187; Ky. Stats., sec. 3483; sec. 2, Bill of Rights; Constitution, secs. 19 and 28; Ky. Stats., sec. 3490, sub-secs. 2 and 26; Steele v. Willis, 23 Ky. Law Rep., 826; City v. Knott, 24 Ky. Law Rep., 1992; L. & N. R. R. Co. v. Barbourville, 20 Ky. Law Rep., 1106; Constitution, secs. 171 and 172; Pence v. Frankfort, 19 Ky. Law Rep., 721; Board of Council, 19 Ky. Law Rep., 1068; Carpenter v. Town of Central Covington, 26 Ky. Law Rep., 430; Ky. Stats., secs. 3666-3667; Dillon on Municipal Corporations, sec. 188; Hainer's Modern Law of Securities, sec. 33; Cooley on Taxation, 2d Ed., p. 239; Smith's Modern Law of Municipal Corporations, sec. 1465.

OPINION BY JUDGE PAYNTER—Affirming.

M. P. Miller sues as a taxpayer. Pineville is a city of the fourth class. It issued bonds for street improvements. The trustees of the school district (the district being co-extensive with the boundary of Pineville) issued bonds for the purpose of building a schoolhouse. The proceeds of the bonds were used for the purposes for which they were intended. After issuing the bonds under sec. 3483, Ky. Stats. 1903, the city limits were reduced. The question involved in this case is whether the property which was within the corporate limits of the city of Pineville at the time the bonds were issued, and which is now outside of the city limits by reason of the proceedings under sec. 3483, Ky. Stats. 1903, can be assessed and made to pay taxes for the purpose of aiding in paying the bonds.

Neither the organic nor the statutory law of the

State provides that the property within the territory stricken from cities of the fourth class shall be required to pay any taxes to the municipality for any purpose. Municipalities are arms of the State government. Their charters are granted by the Legislature. The right to grant the charters implies the right to alter, change or amend them. If too much territory is embraced within the limits of a city, the right to reduce it or to prescribe the manner of doing it is vested in the authority which created it.

In speaking of the control of Legislatures over municipalities it is said in Cooley's Constitutional Limitations, 266: "The creation of municipal corporations, and the conferring upon them of certain powers, and subjecting them to corresponding duties, does not deprive the Legislature of the State of that general control over their citizens which was before possessed. It still has authority to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, overrule their legislative action whenever it is deemed unwise, impolitic or unjust, and even abolish them altogether in the legislative discretion, and substitute those which are different. The rights and franchises of such a corporation, being granted for the purposes of government, can never become such vested rights as against the State that they can not be taken away; nor does the charter constitute a contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated. Restraints on the legislative power of control must be found in the Constitution of the State, or they must rest alone in the legislative discretion. If the legislative action in these cases operates injuriously to the municipalities or to individuals, the remedy is not with the courts. The courts

have no power to interfere, and the people must be looked to, to right through the ballot box all these wrongs.''

This rule was recognized as correct in Laramie County v. Albany County, &c., 92 U. S., 310, 23 L. Ed., 552, where it is said: ''Such corporations are composed of all the inhabitants of the territory included in the political organization, and the attribute of individuality is conferred on the entire mass of such residents, and it may be modified or taken away at the mere will of the Legislature, according to its own views of public convenience, and without any necessity for the consent of those composing the body politic.''

Dillon on Municipal Corporations, 4th Ed., sec. 188, says: ''If a new corporation is created out of the territory of an old corporation, or if a part of its territory or inhabitants is annexed to another corporation, unless some provision is made in the act respecting the property and existing liabilities of the old corporation, the latter will be entitled to all the property and be solely answerable for all the liabilities.''

Smith's Modern Law of Municipal Corporations enunciates the same doctrine. Besides, this court did so in the case of Fitzpatrick v. Board of Trustees, 87 Ky., 138, 10 Ky. Law Rep., 9, 7 S. W., 896.

It is insisted that sec. 3483, Ky. Stats. 1903, which provides for the reduction of the territory of municipalities, is unconstitutional, because only the city or taxpayer within the territory proposed to be stricken off can make a defense or file a remonstrance, and because the defense is limited to show that the majority of taxpayers within the proposed stricken territory are against the change in the city limits, and that such a change will impose unjust

burdens on the taxpayers within the territory to be stricken off.  The question raised is answered by the mere statement that, if the Legislature can add to or reduce the limits of a city at will, then the power also exisits to limit the defense to a proceeding instituted by authority of the Legislature to alter or change the limits of a municipality.  The will of the Legislature is supreme in such matters, and as to whether it exercises its authority wisely can not be questioned.  In addition to that, this court has recognized the validity of the statute in several cases.

Again, it is urged that the taxpayers living within the cut-off territory agreed to pay for their share of the debts of the municipality.  The municipal authorities of Pineville have no jurisdiction over the territory outside of the city limits.  When the territory was reduced, necessarily their authority was restricted to the reduced limits.  The authority to levy and collect taxes is not the subject of agreement, but is a power that is vested by legislative action.

The judgment is affirmed.