## City of Owensboro v. Board of Trustees of Public Library of Owensboro.

(Decided October 9, 1925.)

### Appeal from Daviess Circuit Court.

1. Fines—Statutory Appropriation of Fines to "Maintain" Free Public Libraries Held Applicable Whether Libraries Already Established or Not.—Acts 1920, c. 146, appropriating half of police court forfeitures, fines and costs to maintenance of free public libraries in cities and towns of classes named, held applicable to cities and towns in which libraries were already established as well as to those where libraries were to be thereafter established.

2. Statutes—Statute Relating to Public Libraries Held Not Invalid as Amendment of Prior Statute Without Re-enactment and Pub-

lication at Length.—Acts 1920, c. 146, relating to free public libraries in cities and towns of named classes, which, by section 6, repeals all laws in conflict therewith, held not violative of Constitution, section 51, requiring revised or amended statutes to be re-enacted or published at length, because it failed to specifically mention Acts 1902, c. 70, which it superseded.

3. Statutes—Statute Making Appropriation for Public Libraries in Cities and Towns Held Not to Bestow Unequal Powers on Municipal Corporations of Same Class.—Acts 1920, c. 146, appropriating for use of free public libraries in cities and towns of named classes one-half of net amount of all fines, forfeitures, and costs collected in police court of such cities or towns, held not violative of Constitution, section 156, providing all municipal corporations of same class shall have same powers, because appropriation would apply only in cities then having libraries, in view of procedure provided for authorities to establish them in other cities.

4. Fines—Legislature May Appropriate for Particular Use Money Covered Into Treasury of City which has Come from Operation of Department of City Government.—It is within power of legislature to appropriate money covered into treasury of city, which has come from operation of one of its departments of government, as done by Acts 1920, c. 146, appropriating one-half of net amount of forfeitures, fines, and costs collected in police court for use of free public library.

5. Municipal Corporations—Cities Represent no Sovereignty Distinct from State.—Cities represent no sovereignty distinct from state itself, and are essentially creatures of General Assembly.

6. Fines—Deduction of Police Court Expenses in Determining Amount of Forfeitures, Fines, and Costs Collected, One-Half of which Appropriated to Public Library, Unwarranted.—Under Acts 1920, c. 146, appropriating for use of free public libraries in cities and towns of named classes one-half of "net amount of all forfeitures, fines, and costs collected in the police court of such city or town," city cannot deduct expenses of operation of police court in determining sum, one-half of which is so appropriated.

7. Fines—City's Use for Other Purposes of Forfeitures and Fines Collected is no Defense to Action Therefor by Trustees of Public Library Entitled Thereto Under Statute.—In action by board of trustees of public library to recover one-half of all forfeitures, fines, and costs collected in city police court, appropriated for use of library by Acts 1920, c. 146, it is no defense that under Ky. Stats., section 3360, such fines and forfeitures, except 30 per cent. thereof, paid to prosecuting attorney, have been paid into general revenue fund and used for other purposes.

8. Municipal Corporations—Contractual Appropriation by City for Maintenance of Library Held Not Established.—Agreement of city in accepting gift of public library building to set aside $3,000.00 a year for maintenance and upkeep of such library, held not to result in contractual relation between donor and city, whereby city was only bound to expend $3,000.00 a year, which could be

invoked in defense of action by library trustees to recover one-half of forfeitures and fines collected in police court and appropriated to use of library by Acts 1920, c. 146.

9. Estoppel—Public Library Trustees Held Not Estopped to Assert Claims to Money Appropriated for Library by Statute.—Failure of board of trustees of public library to annually estimate needs for ensuing year as required by Acts 1920, c. 146, held not to estop them from asserting right to one-half of forfeitures, fines, and costs collected in police court and appropriated by such act to use of library.

10. Estoppel—No Neglect or Omission of Officers of Public Corporation to Perform Duties Owing to Public can Work Estoppel Against State or Any Governmental Agency.—No neglect or omission of officers of public corporations to perform duties owing to public can work estoppel against state or any governmental agency.

11. Municipal Corporations—City Held Not Entitled to Set Off Amount of Special Tax for Library Purposes Against Library Trustees' Claim to One-Half of Fines Collected in Police Court.—In suit by board of trustees of public library to recover of city one-half of forfeitures, fines, and costs collected in police court, and appropriated to use of library by Acts 1920, c. 146, city held not entitled to set-off against trustees' claim for sum of $3,000.00 which had been raised annually by special tax levy for use of library, since, under Constitution, section 180, $3,000.00 so appropriated could not have been devoted to any other purpose.

LA VEGA CLEMENTS and BEN D. RINGO for appellant.

GEO. V. TRIPLETT, SR., and R. M. HOLLAND for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

The General Assembly of 1902 passed an act entitled "An act authorizing the establishment of free public libraries in cities of the second and third classes." Acts 1902, chapter 70, page 155. It authorizes the establishment and maintenance of a public library in each of such cities, and provides for the levy and collection of certain taxes, and makes certain appropriations for such establishment and maintenance. It creates a board of trustees of such library and constitutes the same a body politic and corporate, with perpetual succession. It authorizes the general council of the city to accept any donation that has been or may be offered in aid of the establishment of such library, and comply with the conditions upon which such donation is offered, and to annually levy such tax as may be necessary to comply with said conditions.

Andrew Carnegie having offered to donate $30,000.00 for the erection of a public library building in Owensboro upon certain conditions, the city council of that city in 1903, pursuant to the power given by the act of 1902, passed an ordinance accepting the offer of Carnegie and agreeing to the terms and conditions upon which the offer was made, and in accordance with the same set aside annually for the maintenance and upkeep of such library the sum of $3,000.00 from the city's resources, and levied a tax to meet the same; and in addition set aside all net moneys raised by the city from fines and costs recovered in the police court thereof, but provided that of the funds arising from such levy of taxes and from the fines and costs, only the sum of $3,000.00 should be appropriated to the establishment and maintenance of the library each year, and that the balance thereof should go into the general fund.

Thereafter by public subscription a sufficient fund was raised to buy a site for the library, and in 1908 the city by a resolution of its council approved the site selected by the board of trustees; and in January, 1909, again by resolution, accepted the donation of Carnegie and agreed to make an annual levy on the taxable property of the city sufficient to raise $3,000.00 annually for the support and maintenance of the library.

Thereafter the library building was erected by the Carnegie donation, and that fact reported to the council, which report was approved by it, and an annual levy for the approaching fiscal year made upon the property of the city sufficient to raise the sum of $3,000.00 for the support and maintenance of the library under the terms of the contract with Carnegie and the terms of the previous ordinance and resolutions; and thereafter the city authorities have provided for a sufficient levy upon the taxable property of the city to provide the said sum of $3,000 for the support of the library, which sum has been annually collected and paid over to the board of trustees.

In 1920 the General Assembly passed "An act relating to free public libraries in cities and towns of the third, fourth, fifth and sixth classes of this Commonwealth." Acts 1920, chapter 146, page 645. That act, among other things, provides:

"In aid of the establishment and maintenance of such library, there is hereby appropriated for its use and benefit one-half of the net amount of all for-

feitures, fines and costs collected in the police court of such city or town.''

That act by its terms became effective July 1, 1920, but the city has never paid to the trustees any part of such fines, forfeitures or costs up to the filing of this action in 1924, when, upon demand and refusal to pay the same, this action was filed.

The petition is based upon the provisions of the act of 1920, and asks for a judgment against the city for about $16,000.00, which it is alleged is one-half of the net amount of fines, forfeitures and costs collected in the police court since the act became effective. The petition alleges that since July 1, 1920, and up to and including May 31, 1924, the city had collected in forfeitures, fines and costs the net sum of $25,673.06, to one-half of which sum the board of trustees was entitled. It is further alleged that in addition to such collections the city, during that period, had collected in fines, forfeitures and costs the further sum of $6,814.45, which latter had been worked out by those convicted, and that the city had received the benefit thereof, and that the board of trustees is entitled to one-half of said amount, or $3,407.25.

A general demurrer was filed to the petition, and in addition an answer of several paragraphs, some of the paragraphs of which were elaborated in an amended answer.

The court overruled the demurrer to the petition, and sustained a demurrer to each of the paragraphs of the answer as amended, and upon submission entered a judgment for the board of trustees against the city for $12,836.52, being one-half of the net amount actually collected by the city during that period for fines, forfeitures and costs, but declining to adjudge the trustees any part of the fines alleged to have been worked out or satisfied by the confinement of those convicted. There is, however, no cross-appeal.

The grounds urged for reversal are that the demurrer to the petition should have been sustained because:

"1. The act of 1920 does not apply to cities of the third class in which libraries were already established at the date of its enactment.

"2. That the act of 1920 is in conflict with section 51 of the Constitution because, (a) if it was the legislative purpose that the act of 1920 should apply

to libraries then in existence the act was invalid and the title thereto insufficient because there was no reference to repeal or modification of the act of 1902, and (b) because the title of the act gives no intimation that the fund arising from fines, forfeitures and costs which was then set apart by section 3360 of the statutes to the general fund of the city, was to be otherwise appropriated or applied.

"3.    Because the act of 1920 is violative of section 156 of the Constitution in that under the provisions of the act the powers of and the restrictions upon municipal corporations of the same class may be different.

"4.    Because the demurrer to the several paragraphs of the answer as amended was erroneously sustained."

The contention that the provisions of the act of 1920 have no aplication to the cities and towns in the named classes, which at the time of its enactment had already established public libraries, cannot be sustained. A casual reading of the act and its title is most convincing that it embraces, and is intended to embrace, libraries then in existence, as well as those thereafter to be established.

In the first place, the title to the act is most comprehensive; by its terms it relates "to free public libraries in cities and towns," of the classes named, and there is nothing in it suggestive of any restriction in the application of its provisions to such towns or cities as might thereafter establish libraries.    The very first clause of the first section in the act authorized the cities of the classes named to levy a tax "to establish, increase or maintain a public library in such city or town."    The word "establish" necessarily has reference to such cities as did not at the time have libraries, while the word "increase" clearly was intended to have application to such cities or towns as then had libraries but desired to extend or increase them, while the word "maintain" applied to both classes.

Again in section two of the act it is provided that same "shall apply to and govern all the free public libraries in the cities and towns" of the classes involved, and clearly there is no restriction as to the class of free public libraries to which that language has reference. But there is appended to that section the following lan-

guage, which by its terms has reference only to libraries.
then not in existence, to-wit:

"And as soon as sufficient funds for that pur-
pose shall have been accumulated under the provis-
ions of this act, augmented by private contributions.
or otherwise, in any city or town of the classes here-
in referred to in which there is not already in exist-
ence a public library, there shall be established and.
maintained in such city or town a free public library
and the same shall continue as herein provided."

It is clear that the first paragraph of that section.
was a blanket provision declaring that the provisions of
the act should apply to and govern all free public librar-
ies in such cities and towns without reference to whether
they were then in existence or should thereafter be estab-
lished, while the  second quoted provision, according to·
its terms, has application only to towns where there was.
not then in existence such library, but provides that when.
same should be established they should continue "as.
herein provided."

Section 6 of the act of 1920 provides, "All laws and.
parts of laws in conflict herewith are hereby repealed;"·
and the argument is earnestly made by appellant's coun-
sel that because the act of 1920 does not refer to the sec-
tions of the act of 1902, and the sections in the charter
for cities of the third class with which its provisions are·
inconsistent, it is invalid and contrary to the provisions:
of section 51 of our Constitution, which says:

"No law shall be revised, amended, or the pro-
visions thereof extended or conferred by reference·
to its title only, but so much thereof as is revised,
amended, extended or conferred, shall be re-enacted.
and published at length."

The act of 1920 is a comprehensive one dealing alone·
with free public libraries in certain designated classes of·
cities and towns, and is wholly independent of and sepa-
rate and distinct from any and all other acts theretofore·
dealing with that general subject.  It was intended to
cover the entire subject of public libraries in such cities:
and towns.

In such a general enactment, which purports to be a.
compendium of the statute law on the general subject
stated in the title, and which does not purport to speci-
fically amend any prior act, although there may be in it

no reference to any such prior act, if the provisions of the new general act are inconsistent with the provisions of the old, the provisions of the prior act or acts stand repealed or amended as indicated in the new act, notwithstanding the provisions of section 51 of the Constitution, which it has been often held has no reference to such a general enactment.

In the recent case of Lakes v. Goodloe, 195 Ky. 240, the precise question arose, and this court, in denying the application of section 51 under such conditions, said:

> "It is well settled that a later act of the General Assembly, which is an independent enactment and does not purport to amend or revise any prior act, and makes no reference to any prior act, may have the effect of amending or repealing as many prior acts as are inconsistent with it, and that without referring to them, or re-enacting any portion of them, and also without suffering annihilation from the provisions of section 51 of the Constitution. Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017; Murphy v. City of Louisville, 114 Ky. 762, 71 S. W. 934, Ky. Law Rep. 1574; Purnell v. Mann, 105 Ky. 87, 48 S. W. 407, 49 S. W. 346, 50 S. W. 264, 20 Ky. Law Rep. 1396; Herndon v. Farmer, 114 Ky. 200, 70 S. W. 632, 24 Ky. Law Rep. 1045."

The holding in that opinion seems to effectually dispose of appellant's argument that the act is in conflict with the provisions of section 51 of the Constitution, either because it did not refer to the act of 1902 or the charter for cities of the third class.

But it is said that the 1920 act is violative of section 156 of the Constitution, where it is provided that all the municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. This whole argument, however, is based upon the contention that the act of 1920 had no application to such cities and towns as had in existence libraries at the time of its enactment. As we have seen, this argument is fallacious, and in fact the act applies both to such cities as then had libraries as well as to those who might thereafter establish them. But the further argument is that if it is held to apply to both classes alike the appropriation by the legislature of such fines, forfeitures and costs for library purposes is a violation of section 156, because

the appropriation would apply only in such cities as then had libraries, and if there were any which had none, there would be no such appropriation, and that would result in a violation of the provisions of that section. But a complete answer to this contention is that the act of 1920 provides for the establishment of such libraries in cities where there are none, and provides the procedure by which the city authorities may be compelled to establish them.

But even if the act only authorized, and did not require, such cities to establish such libraries, and some of them might establish them and others might not, yet it would not be in violation of the provisions of section 156. Bryan v. Voss, 143 Ky. 422. It was said in that opinion that while the cities of the same class are all governed by the same law and have the same powers, one may exercise the power granted by the General Assembly and another may not, but that such failure by part of them to exercise the power does not affect the existence of the power. It likewise holds that absolute uniformity in cities of the same class is not required.

There is some suggestion that it is beyond the power of the General Assembly to appropriate money covered into the treasury of a city and which has come from the operation of one of its departments of government. In this case the legislature has directly appropriated for the benefit of the board of trustees one-half of the net sum of the fines, forfeitures and costs collected in the police court, the power to do which is called in question.

Without going at length into this question, it may be said that the cities of the state represent no sovereignty distinct from the state itself; they are essentially the creatures of the General Assembly, and, as said in Miller v. City of Pineville, 121 Ky. 211:

"Municipalities are arms of the state government. Their charters are granted by the legislature. The right to grant the charters implies the right to alter, change or amend them."

In that opinion there is a quotation from Cooley's Constitutional Limitations 266, which says, in dealing with legislative powers over municipal corporations:

"The rights and franchises of such a corporation, being granted for the purposes of government, can never become such vested rights as against the

state that they cannot be taken away; nor does the charter constitute a contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated. Restraints on the legislative power of control must be found in the Constitution of the state, or they must rest alone in the legislative discretion.''

See also 19 R. C. L. 728, 758 and 768, et seq.

Paragraph one of the answer was merely a denial of certain legal conclusions from the facts set forth in the petition, coupled with an allegation that the act of 1920 did not apply to cities of the third class which had free public libraries in existence at the date of the enactment.

Paragraphs two, three and four allege in substance that of the amount sought to be recovered, $2,450.75 represented amounts collected from defendants who were convicted in the police court between July 1, 1920, and May 31, 1924, but that such costs are not net because they were expended by the city in arresting and prosecuting such defendants. Paragraph three asserts that the city has paid out during the period named $4,700.00 to its police judge in salary, and more than $50,000.00 to its police officers, and consequently there was no net sum in fines, forfeitures and costs to which the plaintiffs were entitled to one-half.

Clearly the position is unsound, for it cannot be assumed that it was the legislative purpose to pay the total expense of the operation of the police court before there should be a net sum to which the board of trustees would be entitled to one-half. The General Assembly knew as a thing of current knowledge that few of the police courts in our cities are even self-sustaining, and would not presumably have appropriated one-half of a net sum which probably had no existence. Clearly the act means one-half of the net sum of such fines, forfeitures and costs as are covered into the city treasury, without deducting therefrom any expense of prosecution or operation of the police court.

Paragraph five alleges that under the provisions of section 3360, Kentucky Statutes, all fines and forfeitures recovered in the police court when collected should be paid into the general revenue fund of the city, except 30%, which should be paid to the prosecuting attorney for his services in the police court, and that such sums had been used by the city in the payment of salaries of the police judge and police officers which were necessary

for the proper conduct of the police court, and therefore all such fines and forfeitures have been exhausted and applied to such purposes and other governmental uses of the city.

Manifestly this presents no defense; it is only equivalent to an allegation that the city authorities, after the passage of the act of 1920, ignored its provisions and deliberately appropriated the funds which the General Assembly said should go to the board of trustees, to other purposes.

In paragraph six of the original answer, and paragraph two of the amended answer, there is a recital of the history of the organization and establishment of the Owensboro free public library, as well as a recitation of the various ordinances and resolutions accepting the Carnegie donation upon certain terms; and from this it is argued that there was a contractual relation created between the city of Owensboro and Carnegie, wherein the city was bound only to expend $3,000.00 a year for the upkeep and maintenance of the library. There is, however, in none of the resolutions or ordinances any provision which limits or undertakes to limit the annual amount to be expended for the library to $3,000.00; and if there had been it could have had no binding effect either upon the city or the trustees, or the General Assembly. In the case of Ramsey v. City of Shelbyville, 119 Ky. 180, it was held that an ordinance attempting to perpetually appropriate annually a given sum to support a library was the creation of an indebtedness beyond the revenue provided for one year, and therefore violative of section 157 of the Constitution. For this reason, if for no other, there was no contractual relation between Mr. Carnegie and the city of Owensboro, which bound the city to perpetually appropriate $3,000.00 annually for the maintenance of a library.

In paragraph seven it is alleged that under the act of 1920 it was the duty of the board of trustees to annually estimate the needs of the free public library for the ensuing year, and prepare a statement of such estimated needs and submit same to the common council of the city, whereupon it became the duty of the council to make an annual levy for such needs. It is also alleged that they made no such estimate, but permitted the city to make an annual levy sufficient to raise the sum of $3,000.00 each year, which was paid into the library fund used by the trustees; and that because of the acceptance of such $3,-

000.00 annually and of the failure of the trustees to prepare and submit an estimate of such needs, the trustees are now estopped from asserting any claim upon the fines, forfeitures and costs collected.

Clearly there can be no estoppel as against the board of trustees, for it is a public corporation charged with the performance of duties to the public, and is essentially a part of the municipal government. Lambert v. Board of Trustees, 151 Ky. 725.

Being, therefore, a public corporation, and its officials owing to the public and performing for the public certain public duties, no neglect or omission of theirs as to such duties can work an estoppel against the state or any governmental agency. Gay v. Jackson Co. Board of Education, 205 Ky. 277; Clay Co. Board of Education v. Lewis, 187 Ky. 231; Fiscal Court of Cumberland County v. Board of Education, 191 Ky. 263.

But paragraph eight undertakes to assert the right to set off against the judgment in this proceeding the amounts which the city has collected for library purposes since July, 1920.

The sum of $3,000.00 paid each year after the 1920 enactment to the trustees was raised by the levy of a special tax for the particular purpose of maintaining the library, and each year was applied to that purpose, and therefore under the provisions of section 180 of our Constitution could not, even in the first place, have been applied to any other purpose. That section provides:

> "Every act enacted by the General Assembly, and every ordinance and resolution passed by any county, city, town or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for which said tax is levied, and no tax levied or collected for one purpose shall ever be devoted to another purpose."

City of Covington v. Board of Trustees, 113 Ky. 234.

Clearly, therefore, even if in any event the sums so paid annually by the city to the trustees were the proper subject of a set-off or counterclaim, they could not now, directly or indirectly, be recovered by the city and applied to other purposes.

We have no doubt of the correctness of the judgment of the lower court, and the same is affirmed.