J. W. HARDIN, APPELLEE, V. HENRY PAVLAT, COUNTY CLERK, ET AL., DEFENDANTS: HENRY VICK ET AL., INTERVENERS, AP-PELLANTS.

ANNA K. GILGREN, APPELLEE, V. HENRY PAVLAT, COUNTY CLERK, ET AL., DEFENDANTS: HENRY VICK ET AL., INTERVEN-ERS, APPELLANTS.

HATTIE M. BLOME, APPELLEE, V. HENRY PAVLAT, COUNTY CLERK, ET AL., DEFENDANTS: HENRY VICK ET AL., INTERVEN-ERS, APPELLANTS.

FILED APRIL 17, 1936.   No. 29642.

*William H. Wright, Attorney General, Daniel Stubbs* and *R. P. Kepler,* for appellants.

*Paul L. Martin, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

CARTER, J.

These are actions for injunctions to restrain the county clerk and county treasurer of Cheyenne county from certifying and collecting taxes levied by the village of Dalton to pay the existing bonded indebtedness of the village. The state of Nebraska, as an owner of some of the bonds of the village, obtained leave and filed petitions in intervention in each of the three suits. The appellants Vick, Pankau, Carey and Friede, as residents and property owners in the village, also obtained leave and filed their joint petitions in intervention. The trial court granted injunctions to the plaintiff in each case and dismissed the petitions in intervention. Interveners have appealed to this court from the adverse judgment entered against them. All three cases were consolidated and tried together in the district court and will be similarly disposed of on this appeal.

The record in this case shows that the lands of the plaintiffs involved in this action were within the corporate limits.

of the village of Dalton on May 26, 1914, on which date water-works bonds of the village were issued in the amount of $8,000. On May 15, 1921, the village issued electric light bonds in the amount of $14,000, and on January 2, 1922, additional water-works bonds in the amount of $14,500 were issued. All of the foregoing bonds were refunded on and prior to July 1, 1926, and refunding bonds remaining unpaid at the date of filing this suit amount to $34,500, all of which were issued while the lands of these plaintiffs were within the corporate limits of the village, and $26,000 of which are owned and held by the state of Nebraska.

On June 23, 1931, the district court for Cheyenne county, in an action then pending before it, entered a decree disconnecting the lands of plaintiffs from the village of Dalton, which decree has become final.

The record further shows that, in August of each of the years 1931, 1932 and 1933, the county commissioners of Cheyenne county made the annual tax levy for that county, including the village of Dalton. In 1931 the total levy of 14.61 mills for village purposes was assessed against the lands of plaintiffs, while in 1932 and 1933 plaintiffs' lands were assessed for village purposes for the payment of bonds and bond interest only.

Plaintiffs contend that, their lands having been disconnected from the village by the decree of the district court as provided by law, such lands are not subject to village taxes for any purpose. Defendants and interveners contend that the judgment is contrary to law in that it fails to accord to the state's contract the protection against impairment given by section 16, art. I of the Nebraska Constitution, and section 10, art. I of the Constitution of the United States.

The question for decision is whether the acts of the plaintiffs in causing their lands to be disconnected from the village of Dalton impair the obligation of the contracts between the village and the bondholders contrary to the provisions of the state and federal Constitutions.

There can be no question that a bond issued by a village constitutes a contract between the village and the bond-

holders. It has also been repeatedly held that a legislature may not impair the obligation of such a contract. In *Smith-Courtney Co. v. Board of Road Commissioners,* 182 N. Car. 149, 108 S. E. 443, it was held: "While we will not enter upon a full or elaborate discussion of the constitutional question raised here, but leave it for the hearing on the merits if the case comes back to us, we may refer, at this time, to a few of the many cases decided by the federal supreme court, which is the one of last resort upon this phase of the matter in controversy. It has been held by that court that a legislature may, at any time, restrict or revoke at its pleasure any of the powers of a municipal corporation, including, among others, that of taxation, provided its action in that respect shall not operate directly upon the contracts of the corporation, so as to impair their obligation by abrogating or lessening the means of their enforcement. Legislation producing this latter result directly by operating upon those means, is prohibited by the Constitution, and must be disregarded. The prohibition of the Constitution against the passage of laws impairing the obligation of contracts applies to the contracts of the state, and to those of its agents acting under its authority, as well as to contracts between individuals. The courts, treating as void the legislation abrogating or restricting the power of taxation delegated to a municipality, upon the faith of which contracts were made with it, and upon the continuance of which alone they can be enforced, can proceed and by mandamus compel, at the instance of parties interested, the exercise of that power, as if no such legislation had ever been attempted."

Also, in *Mobile v. Watson,* 116 U. S. 289, the court said: "Therefore the remedies for the enforcement of such obligations assumed by a municipal corporation, which existed when the contract was made, must be left unimpaired by the legislature, or, if they are changed, a substantial equivalent must be provided. Where the resource for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were issued, any law

which withdraws or limits the taxing power and leaves no adequate means for the payment of the bonds is forbidden by the Constitution of the United States, and is null and void."

However, our present statute, section 17-412, Comp. St. 1929, providing the procedure for disconnecting lands from the village, has been in force since 1901. Laws 1901, ch. 20. It was therefore in effect at all times when the bondholders purchased the bonds they now hold. In view of the fact that the bondholders purchased the bonds at a time when the statute in question was in force, it is necessarily a part of the contract. When the state purchased the bonds it purchased them knowing that the legislature had provided for the disconnecting of lands from the village that, in justice and equity, ought not to be a part of the village. Clearly, the bondholders in dealing with the village did so with constructive or implied knowledge that its boundaries might be diminished or enlarged in the manner that the statute provides. It seems, therefore, that a bondholder has no vested right to have the territorial limits of the village to remain unchanged so long as the original municipal corporation remains with a substantial part of its original territory unimpaired. Under these circumstances, we fail to see how the statute which was in force prior to the issuance of the bonds by the village could in any way impair the obligation of the contract subsequently entered into.

It must be borne in mind that bondholders do not have a lien upon the property of a village to secure the payment of their bonds. All they have is the promise of the village to pay them when due. While the legislature may not impair the bondholder's contract by subsequent legislation, it does not necessarily mean that the property of the village and the territorial boundaries thereof shall remain constant until the bonds are paid where, as in the case at bar, there was an existing statute providing for the annexation and detachment of real estate from the village.

Appellants rely upon the case of *Erickson v. Nine Mile Irrigation District,* 109 Neb. 189, 190 N. W. 573. It will be

noted that in that case the statute, section 3471, Rev. St. 1913, which was in effect when the bonds were issued, provided that "all the real property of the district *shall be and remain* liable to be assessed for such payments." The legislature *subsequently* passed an act exempting certain of the district's property from the district. Laws 1917, ch. 80, sec. 1. (Italics ours.) It might well be said that this was an impairment of the bondholder's contract with the district and still not be authority for the contention of the appellants in the case at bar.

In the case before us, the statute provided, at the time the water-works bonds were issued, that the village could "levy and collect a general tax * * * to an amount sufficient to pay the interest and principal of said bonds as the same mature, on all the property within such city or incorporated village as *shown and valued upon the assessment rolls."* Comp. St. 1929, sec. 17-442. (Italics ours.) With a statute in force at the time the bonds were issued that permitted a change in the assessment rolls by the successful termination of an action to detach real estate from the village, we conclude that the reasoning in *Erickson v. Nine Mile Irrigation District, supra,* is not applicable in this case. The record fails to show that any of the bonds were issued under a statute containing provisions that were any different.

We know of no rule of law that would permit the levy of a village tax on property outside of the corporate limits of the village. Our statute makes no provision for such a proceeding. In the absence of statute, the authorities clearly hold that the power to levy a village tax on property outside the corporate limits of the village is lacking.

In a similar case, the supreme court of Kentucky said:

"The question involved in this case is whether the property which was within the corporate limits of the city of Pineville at the time the bonds were issued, and which is now outside of the city limits by reason of the proceedings under sec. 3483, Ky. Stats. 1903, can be assessed and made to pay taxes for the purpose of aiding in paying the bonds.

"Neither the organic nor the statutory law of the state

provides that the property within the territory stricken from cities of the fourth class shall be required to pay any taxes to the municipality for any purpose. Municipalities are arms of the state government. Their charters are granted by the legislature. The right to grant the charters implies the right to alter, change or amend them. If too much territory is embraced within the limits of a city, the right to reduce it or to prescribe the manner of doing it is vested in the authority which created it." *Miller v. City of Pineville*, 121 Ky. 211, 89 S. W. 261.

In *State v. Nickerson*, 99 Neb. 517, 156 N. W. 1039, this court said: "Taxes cannot be levied upon property for city purposes after it has been detached from the city by the judgment of a court of competent jurisdiction."

We therefore come to the conclusion that the property disconnected from the village is not liable for any of the village debts. It cannot therefore be taxed for any village purpose in the absence of a statute authorizing such a tax to be levied. The complaint made by bondholders in the case at bar is one that can be addressed to the legislature, but one which the courts are powerless to afford relief.

It appears from the record that the levies of the taxes in question were made by the county board of Cheyenne county after June 23, 1931, the date the property was disconnected from the village. There was no power therefore to levy the taxes in question. In *State v. Nickerson, supra*, this court said:

"Property 'within the city' can be taxed for city purposes. This property was 'within the city' until July 1. After that time it was not within the city. The question is, then: When was it 'taxed?' Is the property taxed when the assessor lists it and it is valued for taxation, or is it taxed when the levy is made? The levy was made by the county board about 10 days after the property was put out of the city. * * *

"In *Wood v. McCook Water-Works Co.*, 97 Neb. 215, the company was held liable for the tax, whether it transferred its property after assessment to one who could be taxed or

to one who could not be taxed. There was no difference in that respect, and it was held that transferring the property to the city itself, which could not be taxed, did not relieve the company from payment of the tax for that year. It was held to be a question of ownership, and not a question of power to tax. When it is a question of ownership, it is the ownership on April 1 that controls. When it is a question of power to tax, that power must exist when it is assumed to exert the power; that is, when the property is taxed. The property is taxed by the city when the city levies the tax."

The record shows that the 1931 taxes were levied by the county board of Cheyenne county on August 4, 1931. Clearly, therefore, the property of these plaintiffs was not subject to the taxes for 1931 and subsequent years.

The judgment of the trial court is therefore in all respects correct and is

AFFIRMED.