### BRYAN COUNTY, OKL., et al. v. UNITED STATES.

#### No. 2308.

Circuit Court of Appeals, Tenth Circuit.

Nov. 12, 1941.

Houston E. Hill, Asst. Atty. Gen., and Bill Steger, Co. Atty., Bryan County, of Durant, Okl. (Mac Q. Williamson, Atty. Gen., on the brief), for appellants.

Norman MacDonald, of Washington, D. C., Atty., Department of Justice (Norman Littell, Asst. Atty. Gen., Cleon Summers, U. S. Atty., and William H. Landram, Asst. U. S. Atty., both of Muskogee, Okl., and Vernon L. Wilkinson, of Washington, D. C., Atty., Department of Justice, on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, *Circuit Judge.*

By this appeal is presented: (1) The jurisdictional question whether the United States can maintain a suit on its own behalf and on behalf of unrestricted Choctaw Indians to recover ad valorem taxes wrongfully assessed, and collected, by a state sovereignty upon unrestricted allotted lands of the unrestricted allottees. (2) If so,

does an adverse adjudication by a state court of competent jurisdiction over the same subject matter, to which the same unrestricted Indians were privy as assignors of the claim for refund, constitute res judicata as to the United States, when it was not a party to the proceedings.

Pursuant to the provisions of the Act of June 28, 1898, 30 Stat. 505, as modified by the Act of July 1, 1902, 32 Stat. 641, 657; Minnie Brewer, a quarter-blood citizen of the Choctaw Tribe and Lake Brewer, an enrolled intermarried white citizen of the same Tribe, husband and wife, were allotted land in the Choctaw Nation in 1905 and 1908. In accordance with the Act of 1898, as modified by the Act of 1902, the deeds from the Government to the Indian allottees contained a provision that the allotted lands "shall be nontaxable while the title remains in the original allottee for a period of twenty-one years after the date of the issuance of the deed." By the Enabling Act of 1906, and by appropriate provisions in its Constitution (Article 10, Section 6, Okl.St.Ann.) the state of Oklahoma recognized and consented to the nontaxable character of the allotted land.

The members of the Choctaw Nation, including the Brewers, accepted the deeds to the allotted land in consideration of their assent to the division of the land of the Tribe in severalty in order to permit the creation and admission of the state of Oklahoma as a state of the Union. See Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L. Ed. 941.

By the Act of May 27, 1908, 35 Stat. 312, Congress removed all restrictions from the sale and incumbrances of land held by members of the Choctaw Tribe in classes, which included the Brewers, and provided that lands from which restrictions had been removed should be subject to taxation.

Apparently acting upon the assumed validity of the act removing restrictions and subjecting the land to taxation, the various counties of the state of Oklahoma, embraced within the Choctaw Nation, placed all allotments in the classes, which included the Brewers, on the tax rolls for the years of 1908, 1909, 1910, and 1911. Accordingly, the Brewers were required to pay the ad valorem tax assessments in the aggregate sum of $223.47, to avoid sale of the land for taxes.

In Gleason v. Wood, 28 Okl. 502, 114 P. 703, and Choate v. Trapp, 28 Okl. 517, 114 P. 709, the Supreme Court of the state of Oklahoma upheld the validity of the Act of 1908, subjecting certain Indian allotments to taxation. In 1912 the Supreme Court of the United States in Choate v. Trapp, supra, and Gleason v. Wood, 224 U.S. 679, 32 S.Ct. 571, 56 L.Ed. 947, and English v. Richardson, 224 U.S. 680, 32 S.Ct. 571, 56 L.Ed. 949, reversed the decisions of the Supreme Court of the state of Oklahoma, holding that the consent of the members of the Five Civilized Tribes to the division of the lands of the respective Tribes in severalty under the Treaties and Acts of Congress, [1] and the acceptance of an allotment by the members of the Tribe in accordance with the statutory purpose containing a provision for tax exemption, created a vested right in the Indians to hold the same free from taxation for twenty-one years from the date of the issuance of the deed, and that such right was protected by the provisions of the 5th Amendment to the Constitution. See, also, Board of Commissioners of Tulsa County, Oklahoma, v. United States, 10 Cir., 94 F.2d 450.

After the decision of the Supreme Court in Choate v. Trapp, supra, one Broadwell acquired by assignment the tax receipts of a great number of members of the Choctaw Tribe, including the Brewers, whose lands had been taxed by the various counties, and which taxes had been paid by the Indian allottees. As such assignee of the tax receipts, the said Broadwell instituted suit in the District Court of Bryan County to recover taxes paid by the members of the Choctaw Tribe, including the Brewers. In 1922, the claim for the tax refund was ultimately denied on the ground that the claim was barred by the statute of limitations of the State of Oklahoma. Broadwell v. Board of Commissioners of Bryan County, 88 Okl. 147, 211 P. 1040, and certiorari denied 262 U.S. 750, 43 S.Ct. 525; 67 L.Ed. 1214. See Board of Commissioners of Love County v. Ward, 68 Okl. 287, 173 P. 1050; Johnson v. Grady County, 50 Okl. 188, 150 P. 497; Atoka County v. Oklahoma State Bank, 62 Okl. 57, 161 P. 1087; In re Hick-

---

[1] Act of June 28, 1898, 30 Stat. 495, 507; Act of July 1, 1902, 32 Stat. 641; and Act of June 16, 1906, 34 Stat. 267. See, also, Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820, and Mullen v. United States, 224 U.S. 448, 32 S.Ct. 494, 56 L.Ed. 834.

man, 63 Okl. 14, 162 P. 176, 177; Smith v. Board of Commissioners of Garvin County, 62 Okl. 120, 162 P. 463, and In re Assessment of First National Bank of El Reno, 64 Okl. 208, 166 P. 883.

In 1939 the United States filed a claim with the Board of County Commissioners of Bryan County for the refund of the same taxes. Upon its rejection the United States instituted this action in its behalf and on behalf of the allottees (the Brewers) against Bryan County, and the Board of County Commissioners to recover the amount of the taxes now agreed to have been wrongfully assessed and paid, together with interest and costs from the date of the wrongful assessment and collection. The trial court gave judgment for the amount of the taxes, but denied interest except from the date of the judgment.

The appellants challenge the jurisdiction of the court on the grounds that the Brewers had been unrestricted Indians since 1908 and, therefore, had full power to alienate their property, or to exercise any other rights accorded citizens of the state of Oklahoma; that since 1908 they were not wards of the United States Government and the Government had no guardianship over them. Consequently, the United States courts had no jurisdiction to entertain suit on behalf of the Government or as guardians of the Indian wards. They urge that the Brewers as such free citizens, with power to alienate their property, or to manage the same as they saw fit, were the real parties in interest and that they alone could bring a suit for the recovery of the taxes. This being true, the decision of the Supreme Court of the State of Oklahoma denying the refund in Broadwell v. Board of County Commissioners, supra, constituted res judicata as to the subject matter of this suit and they cannot recover in this action. They further urge that the suit was barred by the statute of limitations, laches and staleness, and in no event could interest be allowed from the date of the judgment.

 Historically, Congress has evinced a purpose to gradually relax its supervisory powers over the Indians, and to permit them to assume their rightful place in the society of which they are a part. This is consistent with the gradual process of education and enlightenment of the Indians to enable them to manage their own affairs in the communities in which they live. This laudable purpose is likewise consistent with

governmental policy of placing the burden of Government upon those who enjoy its benefits, and its feasibility as applied to the Indians is apparent to those who observe the results. Choteau v. Burnet, 283 U.S. 691, 694, 51 S.Ct. 598, 75 L.Ed. 1353; United States v. Nice, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192; United States v. Waller, 243 U.S. 452, 459, 37 S.Ct. 430, 61 L.Ed. 843, and McCurdy v. United States, 246 U.S. 263, 38 S.Ct. 289, 62 L.Ed. 706. But this policy when exploited to its fullest fruition does not authorize or justify the United States Government, or any sovereign state, or any political subdivision thereof to repudiate its solemn agreement based upon what it has recognized to be a vested right, protected by the Constitution. The authority and manifest duty of the United States Government to safeguard these agreements and rights thereby created is likewise historical. Atlantic & Pacific Railroad Company v. Mingus, 165 U.S. 413, 435, 17 S.Ct. 348, 41 L.Ed. 770; Stephens v. Cherokee Nation, 174 U.S. 445, 19 S.Ct. 722, 43 L.Ed. 1041; Cherokee Nation v. Hitchcock, 187 U.S. 294, 23 S.Ct. 115, 47 L.Ed. 183; Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820; Mullen v. United States, 224 U.S. 448, 32 S.Ct. 494, 56 L.Ed. 834; United States v. State of Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539; and United States v. Creek Nation, 295 U.S. 103, 55 S.Ct. 681, 79 L.Ed. 1331.

 The United States Government is the guardian of its solemn agreement with the Indians growing out of its intercourse with them and over which it has reserved supreme power. There is nothing in the statutes or decisions cited which indicate a disposition on the part of the Government to relinquish this power, except by express delegation. "* * * Congress, in pursuance of the long-established policy of the government, has a right to determine for itself when the guardianship which has been maintained over the Indian shall cease. It is for that body, and not the courts, to determine when the true interests of the Indian require his release from such condition of tutelage. The privileges and immunities of Federal citizenship have never been held to prevent governmental authority from placing such restraints upon the conduct or property of citizens as is necessary for the general good. Incompetent persons, though citizens, may not have the full right to control

their persons and property. * * *" Tiger v. Western Investment Company, 221 U.S. 286, 315, 31 S.Ct. 578, 586, 55 L. Ed. 738. Likewise, the jurisdiction of the federal courts to enforce the agreements when their jurisdiction is invoked by the United States on its own behalf, or as guardian of the Indians, is plain, unequivocal and cannot be foreclosed or circumvented by statutory construction from a court of a State which has recognized, and assented to the agreement and policy which the Government seeks to enforce and vindicate. See Heckman v. United States, supra; United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Stephens v. Cherokee Nation, supra; Bowling and Miami Investment Company v. United States, 233 U.S. 528, 534, 34 S.Ct. 659, 58 L. Ed. 1080; Board of Commissioners of Tulsa County, Oklahoma, v. United States, supra, and Board of County Commissioners of County of Jackson, Kansas, v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313.

■ Whether jurisdiction is derived from general guardianship over the Indians and his affairs, when that guardianship emanates from its irrevocable agreement with the Indian, or whether it adheres in the power of the United States Government as such to enforce through the courts of the United States the declared policy of an Act of Congress, is immaterial. Here, the United States instituted this suit as a guardian of the Indians to enforce an agreement creating a vested right in the Indians, which it had the sovereign duty to enforce. It, also, brings this suit in its own behalf as a sovereign right. In either event, we think its jurisdiction is clear. United States v. Rickert, supra; Heckman v. United States, supra; La Motte v. United States, 254 U.S. 570, 575, 41 S.Ct. 204, 65 L.Ed. 410; United States v. State of Minnesota, supra, and McGugin v. United States, 10 Cir., 109 F.2d 94.

■ It may be conceded that the judgment against Broadwell in Broadwell v. Board of County Commissioners, supra,

operated to estop the allottees from asserting a claim in their own right for the taxes, but this in nowise affects the right of the United States to maintain this suit. Privett v. United States, 256 U.S. 201, 41 S.Ct. 455, 65 L.Ed. 889; United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023, and Heckman v. United States, supra.

The appellants place strong reliance upon United States v. Lee, 10 Cir., 108 F.2d 936, but there is no similarity between that case and the question here presented. In the Lee case a State court, exercising jurisdiction conferred by federal statute, determined that the contract involving land, subject to alienation, was valid and thereby adjudicated the right of the Indian in respect of the matter in controversy. We held that a State court in Oklahoma could render a valid judgment in respect to the unrestricted property of an Indian and that such judgment constituted res judicata as to the Indian, and could not be subsequently attacked by the United States except on jurisdictional grounds, even though the United States was not a party. This adjudication and judgment did not involve any agreement between the United States and the Indians against alienation or tax immunity and, therefore, did not involve the adjudication of the right of the United States to enforce such an agreement.

■ The cause of action was not barred by any statute of limitations or laches. "The immunity of the sovereign from these defenses is historic." Board of County Commissioners of County of Jackson, Kansas, v. United States, supra [308 U.S. 343, 60 S.Ct. 288, 84 L.Ed. 313].

■ The court correctly refused interest on the taxes from the date of their collection but allowed judgment for interest from the date of its rendition. Board of County Commissioners of County of Jackson, Kansas, v. United States, supra.

The judgment of the trial court is affirmed.

HUXMAN, Circuit Judge, concurs in the result.