## MUSKOGEE COUNTY, OKL. et al. v. UNITED STATES.

### No. 2587.

Circuit Court of Appeals, Tenth Circuit.

Jan. 6, 1943.

Houston Bus Hill, Asst. Atty. Gen. (Mac Q. Williamson, Atty. Gen., and Douglas Garrett, Co. Atty., and P. W. Jones, both of Muskogee, Okl., on the brief), for appellants.

Norman MacDonald, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., and Cleon A. Summers, U. S. Atty., of Muskogee, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

By Section 2 of the Act of June 20, 1936, 49 Stat. 1542, all lands the title to which were held by an Indian, subject to restrictions against alienation without the consent and approval of the Secretary of the Interior, and purchased out of trust or restricted funds of the said Indian, were declared to be instrumentalities of the Federal government and nontaxable until otherwise directed by Congress. By the amendatory Act of May 19, 1937, 50 Stat. 188, 25 U.S.C.A. § 412a, Congress limited the scope of the exemption granted by the

1936 Act to "homesteads" purchased out of trust or restricted funds of an individual Indian, and "provided" that the Indian owner should select, with the approval of the Secretary of the Interior, agricultural or grazing lands not exceeding 160 acres, or village or town property not exceeding in value $5,000, to be designated as a homestead.

On September 19, 1941, the United States, in its own right and as guardian of Jefferson Harrison, a fullblood restricted Seminole Indian, commenced this suit against the County of Muskogee, Oklahoma, and its Board of County Commissioners, to collect ad valorem taxes assessed and collected on 439 acres of land located in the said county, which had been heretofore purchased for the said Jefferson Harrison by the Secretary of the Interior with trust or restricted funds of the said Harrison, and restricted against alienation without the consent and approval of the Secretary. In 1934 the said Harrison, with the consent of the Secretary of the Interior, transferred the lands to his heirs at law, reserving unto himself a life estate therein which he held at all times material here. Specifically the United States sought to recover taxes assessed and collected on the 439 acres of land in question for the taxable year 1936, and for taxes levied and collected upon the homestead for the taxable year 1937, and to cancel a tax deed covering the homestead issued to the county pursuant to a tax sale conducted in 1939 for taxes levied on the homestead for the taxable year 1938.

Under facts closely analogous, the principal questions involved here were presented to and decided by this court in Board of County Commissioners of Creek County v. Seber, 10 Cir., 130 F.2d 663 (one judge dissenting). The judgment of the trial court, entered prior to our decision in the Seber case, followed the judgment of the trial court in that case, D.C., 38 F.Supp. 731, which we modified, and as modified, affirmed. Except in respects presently noted, we deem it unnecessary to state in detail the analogous facts on this record, or to state the reasons upon which our conclusions were based in the former case. It is sufficient to say that insofar as applicable, we adhere to the views of the majority in the Seber case, and our conclusions here upon these facts are based upon the conclusions reached there.

In the Seber case, we held the 1936 Act, as amended by the 1937 Act, constitutionally valid as a proper exercise of the power of the national government to legislate for and on behalf of its Indian wards, principally on the grounds that the power to purchase lands for the Indian ward, and to restrict the same against alienation without the consent and approval of the Secretary of the Interior, carried with it the power to free the same from state taxation by expressly declaring them tax-free Federal instrumentalities. We also held that the life estate in the property was the dominant and taxable estate, and that the owner thereof had the right to assert the tax immunity granted by the Acts during its existence. We further held that the right of the Indian to assert the tax immunity granted by the Act in a suit commenced in his own behalf to recover the taxes wrongfully collected, and to free the same from future taxation, did not depend upon state procedural requirements. A fortiori we hold that the United States, acting as the guardian of its ward, is not relegated to state procedural requirements in the assertion of the same right. See also United States v. Dewey County, D.C., 14 F.2d 784; Board of Commissioners of Caddo County v. United States, 10 Cir., 87 F.2d 55; United States v. Nez Perce County, 9 Cir., 95 F.2d 232; Board of Bryan County v. United States, 10 Cir., 123 F.2d 782.

In the former case, we had no occasion to pass upon the application of the state statute of limitations to suits of this character, since under our holding in that case the suit for the recoverable taxes was commenced within the prescribed limitations. But the inapplicability of state statute of limitations to suits by the government on behalf of Indians in this class of cases is too well established to warrant comment here. Board of County Commissioners of Jackson County v. United States, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313, United States v. Dewey County, supra; Board of Commissioners of Caddo County v. United States, supra; United States v. Nez Perce County, supra; Bryan County v. United States, supra.

Contrary to the judgment of the trial court in the Seber case, and the trial court here, we held, in accord with state law, that the taxable status of all real property in Oklahoma was fixed as of the assessment date which is January 1st

of each year for the ensuing fiscal and taxable year beginning July 1st. Consequently, all the lands in question were assessable because non-exempt on January 1, 1936, and were taxable by the state for the ensuing fiscal and taxable year beginning July 1, 1936, although declared exempt from state taxation by the Act of June 20, 1936. By this concession, we accorded proper respect to the state scheme of ad valorem taxation as judged by state law. Consistently with this view, we held that all the lands, having been declared tax exempt as Federal instrumentalities on June 20, 1936, were not assessable on January 1, 1937, for the ensuing fiscal and taxable year beginning July 1, 1937, although between the assessment date and the levy date Congress, by the amendatory Act of May 19, 1937, had limited the exemption to embrace the homestead only. Applying this rule, to which we now adhere, all the lands were subject to taxation for the taxable year 1936, and the taxes paid for that year are not recoverable. But all taxes paid for the taxable year 1937 are recoverable.[1] On January 1, 1938, all of the lands except the homestead were non-exempt, therefore assessable for the ensuing taxable year beginning July 1, 1938.

■■ The selection of the homestead as provided by the amendatory Act (May 19, 1937), was not made until June 25, 1938, nor filed in the office of the county clerk of Muskogee County until September 16, 1938. But no time was fixed in the amendatory Act for the date of selection or designation, and prior to January 1, 1938, all the lands in question were exempt from taxation under the scope of the original Act (June 20, 1936), and we do not think that the designation of the homestead, as provided in the Act was a condition precedent to the effectuation of the exemptions granted by the Act. It is of course incumbent upon the Indian or his guardian to make the homestead designation, but failure to do so does not render valid the sale of the property for taxes after the homestead had been designated. The desig-

nated homestead was sold for taxes, and a tax deed issued in 1939, after the homestead had been designated in 1938. We hold that the deed was void and subject to cancellation by these proceedings. Cf. Zweigel v. Webster, D.C., 32 F.Supp. 1015.

■ It is contended that the legislation under consideration was intended to apply to "landless Indians", and that this intention is manifest by statements made at the time the original Act was under Congressional consideration. But there is certainly nothing in the text of the original Act which indicates a Congressional purpose to limit the scope of the Act to Indians not already seized of tax-free allotments. By the amendatory Act, Congress did limit the scope of the 1936 Act to "homesteads" heretofore purchased with trust or restricted funds of an individual Indian, and provided for their selection. It did not expressly exclude from its scope Indians already possessed of a homestead, and we cannot presume a Congressional intent to do so. If Congress may exempt all lands purchased with restricted funds by declaring them instrumentalities of the Federal government, by the same measure of power it may provide for the exemption of any lesser amount of the whole, and call it a homestead or give it whatever label it chooses, and the fact that an Indian, otherwise coming within the scope of the legislation, is seized of another tax-free allotment, a part of which has been designated as a homestead by Federal act, does not prevent the Federal government from granting tax immunity to other lands purchased with trust or restricted funds of the Indian because it chose to call such lands a homestead, and state laws relating to homestead may not contravene or thwart its declared purposes. Cf. Sperry Oil & Gas Co. v. Chisholm, 264 U.S. 488, 44 S.Ct. 372, 68 L.Ed. 803.

The judgment of the trial court is modified according to the views expressed herein, and as modified affirmed.

---

[1] The petition does not allege that the taxes paid for the taxable year 1937 on the lands, other than the homestead, were illegally or wrongfully paid, and does not seek a recovery therefor, proceeding upon the theory that only the homestead was exempt from state taxation for the taxable year 1937.